UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**WAYNE LEE, SR.**  **CIVIL ACTION**

**VERSUS**  **NO. 04-1497**

**CENTRAL GULF TOWING, L.L.C., ET AL.**  **SECTION "K"(2)**

## ORDER AND REASONS

Before the Court is a Motion to Exclude and/or Limit the Testimony of Robert Borison and to Exclude Any Reference to OSHA[1] Regulations (Doc. No. 92) filed by defendants. Having reviewed the motions, memoranda, exhibits and the relevant law, the Court finds some merit in the motion; however, Robert Borison will be allowed to testify in accordance with this order.

**Background**

On June 15, 2002, Wayne Lee ("Lee") alleges in this suit that he was injured aboard the M/V JANE, an uninspected vessel, owned and operated by Duard Eymard Towing, L.L.C. ("Duard") while the vessel was docked at the Powell Fuel Dock in Louisiana. Lee was the captain of the vessel and was injured at approximately 5:30 p.m. when he slipped and fell from a ladder located in the front cargo hold of the vessel. Lee apparently proceeded down the ladder facing sideways, then remembered his employer's instruction to use the ladder facing the steps. He fell when he attempted to turn and switch his hand holds. It is contended that the ladder's side rails did not extend beyond the landing, a structural member limited the clearance on the back of the ladder which blocked the second step and the top step was not level with the landing platform.

---

[1]Department of Labor's Occupational Safety and Health Administration ("OSHA")

**Standard Applicable**

Federal Rule of Evidence 702 which governs the admissibility of expert testimony states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The present rule was amended in 2000 to reflect the United States Supreme Court's decisions of *Daubert*, 509 U.S. 579, 113 S. Ct. 2786 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167 (1999). *Daubert* changed the criteria for the admissibility of expert testimony and charged trial courts to act as "gate-keepers" to ensure that the proffered testimony is both relevant and reliable. *Daubert*, 509 U.S. at 589, 592-93, 113 S. Ct. at 2795, 2796. *Kumho Tire* held that the relevant and reliable standard announced in *Daubert* for scientific expert testimony applied to all types of expert testimony. Id., 526 U.S. at 147, 119 S. Ct. at 1171.

As the Court noted in its previous ruling, *Daubert* provides a two-prong test for the trial judge to determine the admissibility of expert testimony. The court "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592, 113 S. Ct. at 2796. Both prongs of the *Daubert* test must be satisfied before the proffered expert testimony may be admitted. *Id.* at 595, 113 S. Ct. at 2796. This analysis "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.*

Thus, the first prong of *Daubert* focuses on whether the expert testimony is based on a reliable methodology. In determining an expert's reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595, 113 S. Ct. at 2797, 125 L.Ed.2d at 484. Several factors which may be considered in determining the soundness of the scientific methodology include:

> 1) whether the theory or technique can be and has been tested;
>
> 2) whether the theory or technique has been subjected to peer review and publication;
>
> 3) the known or potential rate of error and the existence and maintenance of standards; and
>
> 4) whether the theory or technique used has been generally accepted.

*Id.* at 593-94, 113 S. Ct. at 296-97, 125 L.Ed.2d at 482-83. These factors do not constitute a definitive checklist or test. *Kuhmo Tire*, 526 U.S. at 144, 119 S. Ct. at 1175. Instead, they compose a nonexclusive, flexible test to ascertain the validity or reliability of the methodology the expert employed. *Id.* The applicability of each factor depends on the particular facts of the case. *Id.*

The second prong, that is whether the proposed testimony will assist the trier of fact to understand or determine a fact in issue, goes primarily to the issue of relevancy. *Daubert*, 509 at 591. Indeed, this examination is described in *Daubert* as whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. *Id. citing United States v. Downing,* 753 F.2d 1224, 1242 (3rd Cir. 1985). As noted in *Cunningham v. Bienfang*, 2002 WL 31553976 (N.D. Tex. Nov. 15, 2002), Fed. R. Evid. 401 defines "relevant evidence" as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

3

When expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the testimony. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998). To meet this burden, that party cannot simply rely on the relevant expert's assurances that he or she has utilized generally accepted scientific methodology. Rather, some objective, independent validation of the expert's methodology is required. *Id.* Nonetheless, as Judge Vance stated in *Scordill v. Louisville Ladder Group, L.L.C.*, 2003 WL 22427981 (E.D.La. October 24, 2003):

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. *See Daubert*, 509 U.S. at 596. As the *Daubert* Court noted, "[vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id*. (citing *Rock v. Arkansas,* 483 U.S. 44, 61, 107 S. Ct. 2704, 97 L.Ed.2d 37 (1987). The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion rather than its admissibility and should be left for the jury's consideration.'" *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.* 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

*Scordill*, at *3. Once again using this framework, the Court will now turn to the instant Motion in Limine

Robert Borison's ("Borison") seven page report present his opinion on factors that directly caused or contributed to the injuries sustained. Borison reviewed the deposition testimony of plaintiff and two other individuals, one of whom drew a contested sketch of the subject ladder, and the other being the owner of the vessel; he also reviewed a number of documents including the injury report, the M/V JANE's rough logs, answers to discovery requests and interrogatories. Borison also inspected the vessel; however, the ladder in question had been removed. Also used was a hand drawing and measurement of the forward hold ladder on the M/V JANE which was the

subject of another motion in limine to exclude, a ruling on which was deferred subject to proof presented by plaintiff to demonstrate the reliability of the sketch. In that ruling, the Court held that in the event that the sketch is not admitted, plaintiff's experts must render their opinions on information other than that based on the sketch.

Borison's qualifications include over 30 years experience in the fields relating to the exploration, production and transport of oil and gas and the marine industry. It appears that his qualifications are not in dispute.

Borison opines that:

1.  The Port Captain and Central Gulf Towing's safety supervisor's were negligent in their failure to inspect the vessel while being built and allowing the installation of the ladder in question which did not meet or surpass the OSHA regulation and other national industry standards.

2.  A properly designed ladder should have been installed to prevent the potential hazard of slipping and falling from the ladder. This ladder should have been (a) level with the top of the landing platform; (b) the side rails of "through ladders" should have extended 3 feet 6 inches above the top of the landing platform; (c) the perpendicular distance from the centerline of the steps and rungs, to the nearest permanent object in back of the ladder should not be less than 7 inches.

3.  There was a failure to train the crew of the M/V JANE on the proper method of using the vessel's interior stairs–that is (a) face the ladder as one ascends and descends; (b)

       do not carry anything when doing so; (c) use a power grip on the vertical side rails when using the ladder; and (d) always have a 3 point connection with the ladder.

4. The ladder at issue violated OSHA regulations concerning fixed ladders, 29 U.S.C. 1910.27–specifically:

    a)     subsection (b)(1)–the distance between rungs, cleats and steps shall not exceed 12 inches and shall be uniform;

    b)     subsection (b)(2)–side rails;

    c)     subsection (c)(4)–clearance in back of ladder;

    d)     subsection(d)(2)(iii) One rung of any section of ladder shall be located at the landing internally served by the ladder. Where access to the landing is through the ladder, the same rung spacing as used on the ladder shall be used from the landing platform to the first rung below the landing.

5. The ladder at issue violated American National Standard ANSIA14.3–For Ladders–Fixed–Safety Requirements

Based on these foregoing findings, Borison rendered the following assessment:

> The injuries sustained by Captain Lee were caused when he fell from a poorly designed and installed ladder. The ladder's side rails did not extend beyond the landing platform, and therefore did not afford Captain Lee a power grip while descending the ladder. The step from which he fell had an inadequate "back clearance" which did not allow him to place his foot on the step properly. The top step was not level with the landing platform. Additionally, the steps were not spaced 12" apart as required by the ANSI standard. The design of this ladder caused Captain Lee's accident, violated applicable OSHA regulations and violated well-established industry safety standards. A court may find the M/V JANE unseaworthy because of these violations, and the management of Central Gulf Towing, LLC negligent.

(Report of Robert Borison, Memorandum in Support of Motion, Exh. "A").

6

**Issues Presented**

Defendants maintain that the proffered testimony is unreliable and irrelevant under Fed. R. Evid. 702 and under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 573 (1993) and its progeny for the following reasons:

1. Mr. Borison's opinions rely on and reference OSHA regulations and ANSI standards, which are not applicable to this case; and

2. Mr. Borison's opinions are based on an inaccurate, unreliable, unauthenticated and inadmissible document/source and are therefore unreliable.

3. Mr. Borison's proffered testimony amounts to nothing more than impermissible legal conclusions and lawyers' argument;

As the real focus of this motion concerns the reliance of the expert on the application of the OSHA and ANSI standards, the Court will begin with its analysis thereof.

**Reliance on OSHA Standards**

OSHA regulations may apply to uninspected vessels such as the M/V JANE. In *Chao v. Mallard Bay Drilling, Inc.*, 534 U.S. 235 (2002), the Supreme Court found that the general marine safety regulations issued by the United States Coast Guard did not preempt OSHA's jurisdiction over working conditions on an uninspected vessel where Coast Guard regulations did not address the occupational safety and health risks specifically posed–in that instance, those arising from inland drilling operations on uninspected vessels. In the case at bar, there has been no allegation that the Coast Guard has preempted the field in regard to the regulation of a ladder on a vessel such as the M/V JANE.

In the instant case, plaintiff's expert has relied on 29 C.F.R. §1910.27–regulations that concern fixed ladders. Defendants argue that these regulations are only applicable to land based operations and were not meant to apply to vessels. *Keller v. United States*, 39 F/3d 16, 27 (1st Cir. 1994). In *Mauler v. F/V CENTAURUS*, 1992 WL 510215 (W.D. Wash. Dec. 17, 1992), another case relied on by defendants, the court analyzed the applicability of 29 U.S.C. 1910.21-.24 to a ship stairway that was 60 degrees to the horizontal where OSHA regulations regarding fixed industrial stairs require that the stairs be no steeper than 50 degrees. The Court in that case relying on the agency's reasonable interpretation found in the 1990 Occupational Safety and Health Administration proposed revisions to its general industry standards for work place walking and working surfaces, 29 C.F.R. Part 1910, subpart D, 55 FR 13,389; 1990 WL 332058, noted that "in proposed changes to the regulations issued for comment in 1990, OSHA declared that its stairway regulation did not cover "ship's ladders," stairways to fifty to seventy degree pitch and proposed to add requirement for such stairways. 55 Fed.Reg. 13,371 (1990). Those changes were never enacted." *Id*. at *3.

This Court finds this analysis not directly on point because the *Mauler* court analyzed the applicability of the fixed industrial stair regulations to a ship's stairs. Borison has used the OSHA regulations concerning fixed ladders and dealt with sections 1910.21-24 rather than section 1910.27. Section 1910.27 admittedly is not created specifically for a marine setting; however, the analysis above does not necessary preclude the applicability of section 1910.27 to the ladder at issue in this case. In essence, it does not necessarily follow that although OSHA's "stairway" regulations do not apply to vessels, that the regulations as to fixed ladders do not as well.

Moreover, the fact that these regulations may not directly apply to vessels does not mean that OSHA as well as the AINSI standards for safety cannot be consulted for safety in ladders as a guide.

As noted by Judge Rubin as a district judge in this Court, OSHA regulations may be referred to as guides for the determination of standards of care. *National Marine Service, Inc. v. Gulf Oil Co.*, 433 F. Supp. 913, 919 (E.D.La. 1977); *see Dixon v. Intern'l Harvester Co.*, 754 F.2d 573, 581 (5th Cir. 1985) (noting that OSHA standards may be inadmissible where suit is not against employer); *In re Vulcan Materials Co.*, 369 F. Supp.2d 737, 747 n.5 (E.D.Va. 2005) (Fourth Circuit recognizes that OSHA regulations provide evidence of standard of care exacted of employers).  At a minimum, the Court finds that reference to these standards provides guidance to determine whether the employer has breached his duty to his Jones Act employee.  Cross-examination can demonstrate how these standards may not apply to an uninspected vessel's ladder;[2] any danger of undue emphasis being placed thereon may be remedied thereby and in the proper instruction of the jury.   Thus, the Court finds that the opinions are reliable in this instance and will deny the motion in limine in that regard.

**Opinions are Based on Inaccurate Data**

---

[2] The Court notes that apparently the Fifth Circuit has not definitively decided whether an injured seaman can rely on a violation of an otherwise applicable OSHA regulation as proof of negligence *per se*.  D. Wooster, *Welcome Aboard, OSHA: Occupational Safety and Health Regulations May Apply to Uninspected Vessels in State Waters*, 27 Tul. Mar. L.J. 227, 251 (2002).  Thus, whether plaintiff may make such a legal argument–that is the violation of the OSHA standard establishes negligence *per se*–must be decided upon properly filed substantive motion and will not be considered in the context of a motion in limine.

As previously stated, the admissibility of any opinion that is based solely on the contested drawing will not be allowed until the Court is satisfied as to its reliability and trustworthiness. It appears that while the stair upon which plaintiff fell no longer exists, there is a sister ship, the M/V HELEN that has a similar stairway. In addition, to the extent that Borison's opinion is based on plaintiff's testimony, it is admissible. Thus, the Court will deny the motion in this regard provided that the proper foundation is laid by plaintiff.

**Impermissible Legal Conclusions**

Borison opines, "A court may find the M/V JANE unseaworthy because of these violations, and the management of Central Gulf Towing, LLC negligent." That statement does make a legal conclusion, and this sentence and testimony to that end shall be stricken. However, the rest of Borison's conclusions go to causation which is precisely within the domain of expert testimony. Fed. R. Evid. 704. Thus, the Court will grant the motion with regard to the single sentence noted above. Accordingly,

**IT IS ORDERED** that Motion to Exclude and/or Limit the Testimony of Robert Borison and to Exclude Any Reference to OSHA Regulations (Doc. No. 92) is **GRANTED** with respect to the sentence concerning unseaworthiness and negligence and is **DENIED** in accordance with the parameters set forth herein.

New Orleans, Louisiana, this  30th   day of July, 2005.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**